**DUANE MORRIS LLP**
**A Delaware Limited Liability Partnership**
By:   Stephen Sussman
      Sheila Raftery Wiggins
      Adrienne Gittens
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003
Telephone: +1 856 874 4200
Fax: +1 856 424 4446

*Attorneys for Plaintiff, 7-Eleven, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 7-ELEVEN, INC., | : |
| Plaintiff, | : |
| v. | : Civil Action No.: _____ |
| MAIA INVESTMENT COMPANY, INC. and NASHWA YOUNES | : **COMPLAINT** |
| Defendants. | : |

Plaintiff, 7-Eleven, Inc. ("7-Eleven"), by its attorneys, Duane Morris LLP, for its complaint in the above-entitled action, alleges as follows:

**Nature of this Action**

1. This action involves trademark infringement by the defendants, Maia Investment Company, Inc. ("Maia") and its president Nashwa Younes.

2. The defendants have offered and continue to offer 7-Eleven's proprietary, branded, and exclusive products for sale at a convenience store called "24-7 Foodmart" which is located within a Lukoil gas station in Cherry Hill, New Jersey (the "24-7 Foodmart") and is owned and operated by Maia, which, in turn, is controlled by Nashwa Younes.

3. Defendants are using the aforesaid 7-ELEVEN merchandise and other materials bearing 7-Eleven's trademarks, name, logos and trade dress, in manners constituting (i) infringements or counterfeiting of 7-Eleven's trademarks and trade dress, and (ii) false representations of 7-Eleven's affiliation with the 24-7 Foodmart, or sponsorship or endorsement thereof.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity), 15 U.S.C. §§ 1121 and 1338(a) (Lanham Act), and under principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1965.

6. The amount in controversy on each of the counts set forth below exceeds $75,000 exclusive of interest and costs.

## The Parties

7. 7-Eleven is a Texas corporation, duly authorized to do business within the State of New Jersey. It is a citizen of the State of Texas.

8. Maia Investment Company, Inc. is a New Jersey corporation with its principal place of business located at 1498 Haddonfield-Berlin Road, Cherry Hill, New Jersey. It is a corporate citizen of the State of New Jersey. Maia owns a Lukoil gas station and affiliated 24-7 Foodmart located at 1498 Haddonfield-Berlin Road, Cherry Hill, New Jersey.

9. Nashwa Younes, an individual, is a citizen of the State of New Jersey who resides at 3 Princeton Drive, Voorhees, New Jersey 08043. Nashwa Younes is the President of defendant Maia and, upon information and belief, oversaw, directed, and carried out the conduct at the 24-7 Foodmart described herein.

## Facts Common to All Counts

### The 7-Eleven System and Marks

10. Based in Dallas, Texas, 7-Eleven franchises the 7-ELEVEN chain of convenience stores.

11. Since long prior to the acts complained of herein, 7-Eleven has been engaged in the business, *inter alia*, of offering convenience store services and products to the general public at various locations throughout the United States, including within this judicial district. In connection with such business, 7-Eleven licenses its franchisees to utilize the 7-ELEVEN trademarks and trade names.

12. There are currently over 7,800 convenience stores throughout the United States, including within the State of New Jersey, being operated by 7-Eleven or its franchisees under the 7-ELEVEN name and mark.

13. Since long prior to the acts complained of herein, 7-Eleven and its franchisees annually have sold nationally billions of dollars of products and services under the 7-ELEVEN name, mark, and logo and other trademarks and trade dress belonging to 7-Eleven, and have annually spent many millions of dollars to advertise and promote 7-Eleven's convenience store services and related goods and services nationally, including in New Jersey, under those trade identities.

14. Since long prior to the acts complained of herein, 7-Eleven has owned an invaluable goodwill which is symbolized by 7-Eleven's name, marks, logos and trade dress, the use of which substantially increases the value of the 7-ELEVEN stores and the salability of the goods and services sold through them.

15. By virtue of the extensive use, advertising, and promotion, and, since long prior to the acts complained of herein, the 7-ELEVEN name and 7-ELEVEN marks, logos and trade dress acquired strong secondary meanings signifying 7-Eleven and became famous and extremely well known among consumers.

16. The taste experience enjoyed by customers of 7-ELEVEN stores includes unique flavors and versions of products available only through 7-ELEVEN stores.

17. Customers of 7-ELEVEN stores have come to identify 7-ELEVEN stores as the source of the unique taste experience offered by the 7-Eleven exclusive product flavors.

18. 7-Eleven has registered or applied to register its marks in the United States Patent and Trademark Office (collectively, the "7-Eleven Marks"). Such registrations include, but are not limited to, the following:

| MARK | REG. NO. | DATE | GOODS OR SERVICES |
| --- | --- | --- | --- |
| 7-ELEVEN & Design | 718,016 | 07/04/1961 | Retail grocery service |
| 7-ELEVEN | 896,654 | 08/11/1970 | Retail grocery service |
| 7-ELEVEN & Design | 920,897 | 09/21/1971 | Retail grocery services |
| 7-ELEVEN | 896,654 | 08/11/1970 | Retail grocery store service |
| 7-ELEVEN & Design | 961,594 | 06/19/1973 | Various flavors of soft drinks |
| 7-ELEVEN & Design | 1,035,454 | 03/09/1976 | Sandwiches |
| 7-ELEVEN & Design | 1,288,594 | 08/07/1984 | Gasoline |
| 7-ELEVEN & Design | 1,402,425 | 07/22/1986 | Soft drinks for consumption on or off the premises |

| MARK | REG. NO. | DATE | GOODS OR SERVICES |
|---|---|---|---|
| 7-ELEVEN | 1,702,010 | 07/21/1992 | Coffee for consumption on or off the premises |
| 7-ELEVEN | 2,152,472 | 04/21/1998 | Telephone calling card services |
| 7-ELEVEN & Design | 2,642,740 | 10/29/2002 | Coffee for consumption on or off the premises; Soft drinks and semi-frozen soft drinks for consumption on or off the premises |
| 7-ELEVEN | 2,685,684 | 02/11/2003 | Retail store services featuring gasoline and retail store services featuring convenience store items |
| 7-ELEVEN & Design | 2,834,419 | 04/20/2004 | Retail convenience store services |
| 7-ELEVEN | 2,914,788 | 12/28/2004 | Gasoline |
| 7-ELEVEN | 3,338,512 | 11/20/2007 | Gift card services and debit card services. |
| SLURPEE | 829,177 | 5/23/1967 | Fruit flavored, semi-frozen soft drinks |
| BIG BITE | 2,780,103 | 11/4/2003 | Sandwiches, namely hot dogs and buns for consumption on or off the premises |
| 7-ELEVEN FRESH TO GO & Design | 4,056,833 | 11/15/2011 | Food products, namely, prepared fruit, prepared vegetables, prepared salads, consisting primarily of vegetables, meat, cheese and/or fruit; cheese |

| MARK | APP. NO. | DATE FILED | GOODS OR SERVICES |
|---|---|---|---|

| MARK | APP. NO. | DATE FILED | GOODS OR SERVICES |
|---|---|---|---|
| 7 SELECT (logo) | 85/320,770 | 5/13/11 | *Inter alia:* Processed nuts, namely, peanuts, cashews and almonds; trail mix, namely, snack mix, consisting primarily of processed nuts, seeds, dried fruit, and also including chocolate; potato and vegetable chips; beef jerky; beef sticks, namely, processed flavored beef snacks; sausages; olive oil; vegetable oil; cheese and cracker combinations; soups; onion rings; snack dips, namely, bean, cheese and ranch dip; seeds, namely, processed sunflower seeds; prepared chicken wings; chicken nuggets; popcorn chicken; prepared peppers and potato skins; pork rinds; cheese sticks consisting primarily of cheese; frozen foods, namely, chicken wings and chicken nuggets, candy; corn chips; chocolate covered nuts; chocolate covered pretzels; chocolate covered espresso beans; cookies; popcorn; crackers; noodles; sugar; salt; pepper; wheat and multi-grain chips; cookie dough; ice cream; ice cream novelties; frozen confections; sherbet; puffed rice squares; macaroni and cheese; pretzels; salsa; pizza; calzones; bakery products, namely, pies, toaster pastries, donuts, muffins, rolls, cupcakes, buns, cakes, danish, churros, bear claws, and bread; tea-based beverages; hot chocolate; cappuccino; frozen foods, namely, entrees consisting primarily of pasta |

7

| MARK | APP. NO. | DATE FILED | GOODS OR SERVICES |
|---|---|---|---|
| | | | or rice, hors d'oeuvres, and pizza; coffee and tea |
| 7-ELEVEN FRESH TO GO | 86/086,070 | 10/8/2013 | Food products, namely, chicken wings, potato wedges, hash brown potatoes; prepared fruit; prepared vegetables; prepared salads, consisting primarily of vegetables, meat, cheese and/or fruit; cheese; bakery products, namely, cookies, brownies, pastry, donuts, donut holes, danish, cakes, churros, croissants, bagels, sweet rolls bread, rolls bread and muffins; rice-based and marshmallow snack foods; sandwiches consisting of vegetable, meat, egg, and/or cheese; food products, namely, pizza and taquitos |

The aforesaid registrations and applications are valid, subsisting, and owned by 7-Eleven, and Reg. Nos. 718,016; 896,654; 920,897; 896,654; 961,594; 1,035,454; 1,288,594; 1,402,425; 1,702,010; 2,152,472; 2,642,740; 2,685,684; 2,834,419; 2,914,788; 3,338,512; 829,177; and 2,780,103 are now incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and, therefore, conclusive evidence of the validity of those registered marks and of their registration, of 7-Eleven's ownership of those marks, and of 7-Eleven's exclusive right to use those marks on or in connection with the identified goods and services.

19. As part of each franchise agreement into which it enters, 7-Eleven licenses the franchisee to use the 7-ELEVEN name and mark, and related trademarks, trade dress and system of operations (collectively, the "Marks"), in accordance with the franchise agreement and 7-Eleven's standards and specifications.

**Defendants' Unauthorized Use of the Marks and Exclusive Products**

20. In July 2014, 7-Eleven personnel visited the 24-7 Foodmart and observed substantial amounts of 7-Eleven proprietary and exclusive merchandise being offered for sale there.

21. Thereafter, 7-Eleven representatives conducted multiple shops of the 24-7 Foodmart, during which the shoppers observed, and obtained video and photographic evidence of, products bearing 7-Eleven's Marks being offered for sale at the 24-7 Foodmart.

22. During a shop of the 24-7 Foodmart on July 13, 2014, 7-Eleven personnel observed multiple 7-Eleven exclusive and proprietary products offered for sale, including the following 7-Eleven proprietary grill products: Cheeseburger Bites, Buffalo Chicken Rollers, and BIG BITE hot dogs.

23. During a shop of the 24-7 Foodmart on July 26, 2014, 7-Eleven personnel purchased an entire case of 7-Eleven proprietary Cheeseburger Bites in packaging bearing 7-Eleven Marks.

9

24. During a shop of the 24-7 Foodmart on September 16, 2014, 7-Eleven personnel observed a variety of 7-Eleven proprietary products for sale, including Cheeseburger Bites, BIG BITE hot dogs, and Buffalo Chicken Rollers, all displayed with 7-Eleven's proprietary roller grill product identifiers.

25. During a shop of the 24-7 Foodmart on October 18, 2014, 7-Eleven personnel observed 7-Eleven proprietary products for sale, including Cheeseburger Bites, BIG BITE hot dogs, Kielbasa, Buffalo Chicken Taquitos, and Buffalo Chicken Rollers, all displayed with 7-Eleven's proprietary roller grill product identifiers.

26. During a shop of the 24-7 Foodmart on December 19, 2014, 7-Eleven personnel observed 7-Eleven proprietary products for sale, including Cheeseburger Bites and Buffalo Chicken Taquitos. Those items were displayed with 7-Eleven's proprietary roller grill product identifiers.

27. Long subsequent to the acquisition of secondary meaning and fame of 7-Eleven's 7-ELEVEN name, mark, logo, taste experience associated with the 7-Eleven exclusive products, and the 7-Eleven Marks, the defendants commenced making unauthorized use of those 7-ELEVEN trade identities for convenience store products.

28. Upon information and belief, the defendants began using 7-Eleven's name, Marks, logos, and exclusive products in order to deliberately and willfully trade upon the fame and goodwill represented by 7-Eleven's trade identities.

29. Defendants' use of each of 7-Eleven's names, Marks, logos, and exclusive products falsely and deceptively represents that the defendants' convenience store services and products are connected with, sponsored, or approved by 7-Eleven, and the defendants' use of each is likely to cause confusion with 7-Eleven's or its franchisees' use of those 7-Eleven trade identities, or otherwise to cause deception or mistake as to source, sponsorship, or approval of the defendants' convenience store services and products.

30. Defendants did not report to 7-Eleven the sale of the 7-Eleven merchandise sold at the 24-7 Foodmart, did not remit to 7-Eleven any proceeds from the sale of such merchandise, and deliberately concealed their conduct from 7-Eleven.

## COUNT ONE
### Trademark Infringement
### (Against All Defendants)

31. 7-Eleven repeats and reiterates the allegations contained in the each of the foregoing paragraphs as if fully set forth herein.

32. The 7-Eleven Marks and proprietary taste experience have become well and favorably known to the general public as an indication of quality

merchandise and services, distinguish 7-ELEVEN stores from similar businesses and represent valuable assets of 7-Eleven's business which enjoys substantial goodwill.

33. By selling products bearing 7-Eleven Marks, as well as other 7-Eleven proprietary and exclusive products in the 24-7 Foodmart, the defendants are intentionally trading on the 7-Eleven Marks and proprietary taste experience and deliberately misappropriating 7-Eleven's goodwill, all to the detriment of 7-Eleven.

34. The defendants' unauthorized use of the Marks and unauthorized sale of 7-Eleven proprietary and exclusive products is, or appears to customers to be, identical to the lawful use and sale thereof by 7-Eleven and by thousands of 7-ELEVEN franchisees. Accordingly, the defendants' conduct is intended to, and does, cause a likelihood of confusion or mistake.

35. The 24-7 Foodmart is not a 7-ELEVEN franchised convenience store, and the services offered therein are not affiliated with, or sponsored or endorsed by 7-Eleven. By offering 7-ELEVEN proprietary and exclusive food products for sale at the 24-7 Foodmart, defendants are attempting to palm off on the public a counterfeit of the 7-ELEVEN licensed and authorized services and proprietary taste experience, for defendants' own profit and advantage, thereby attempting to

confuse or deceive the public as to the affiliation of the 24-7 Foodmart with 7-Eleven.

36. Defendants' use of the 7-ELEVEN names, Marks, and logos, and sale of 7-ELEVEN proprietary and exclusive products in the 24-7 Foodmart is likely to cause consumers mistakenly to believe that the 24-7 Foodmart is approved, sponsored or otherwise legitimately connected with 7-Eleven.

37. Defendants' conduct has been and continues to be undertaken with deliberate intention and design to trade on 7-Eleven's goodwill and constitutes willful, wanton and otherwise outrageous conduct.

38. Defendants' unauthorized uses of each of 7-Eleven's federally registered Marks infringes 7-Eleven's rights in each of those Marks in violation of Section 32 of the United States Trademark Act, 15 U.S.C. § 1114.

39. Defendants' use of 7-Eleven's trade identities constitutes use of a "counterfeit mark" within the meaning of Section 34 of the United States Trademark Act, 15 U.S.C. § 1116(d)(1)(B).

40. Defendants' unauthorized uses of 7-Eleven's trade identities are greatly and irreparably damaging to 7-Eleven and will continue to damage 7-Eleven until enjoined by this Court; wherefore, 7-Eleven is without adequate remedy at law.

41. Defendants' unauthorized use of the 7-Eleven Marks constitutes one or more misleading uses of a word, term, name, symbol, or device, or a combination thereof, in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a).

**WHEREFORE**, 7-Eleven demands that an Order and judgment be entered:

1. Enjoining and restraining defendants and their agents, servants, employees and all persons acting in concert or participation with them, or acting under the authority of or in privity with them, at first preliminarily during the pendency of this action, and thereafter permanently, from:

   (a) using 7-Eleven's Marks, or any colorable imitation of any 7-Eleven name or mark and from engaging in conduct suggesting any affiliation or connection between 7-Eleven on the one hand, and the 24-7 Foodmart, Maia, or Naswha Younes on the other hand;

   (b) advertising, distributing, offering for sale or selling goods and services bearing the Marks in any manner;

   (c) otherwise infringing 7-Eleven's Marks, or diluting the distinctive quality of the Marks;

   (d) advertising, distributing, offering for sale or selling 7-Eleven proprietary goods and services;

   (e) advertising, distributing, offering for sale or selling 7-Eleven exclusive goods and services;

   (f) committing any other act or acts which are calculated to induce the belief that goods and services not of 7-Eleven's sponsorship are of 7-Eleven's sponsorship; and

   (g) otherwise competing unfairly with 7-Eleven in any manner.

2. Requiring defendants to deliver up to 7-Eleven all indicia of 7-Eleven's Marks in their possession or under their control.

3. Requiring defendants to deliver up to 7-Eleven all 7-ELEVEN proprietary products in their possession or under their control.

4. Requiring defendants to deliver up to 7-Eleven all 7-ELEVEN exclusive products in their possession or under their control.

5. Ordering defendants to file with the Court and to serve upon 7-Eleven's attorneys within ten (10) days after service upon such individual of the Decree of Injunction issued by the Court in this action, a report in writing setting forth in detail the manner and form in which such individuals and entities have complied with such injunction.

6. Requiring defendants to account to 7-Eleven for all profits made by virtue of said defendants' infringement of 7-Eleven's Marks, proprietary products, and exclusive products.

7. Awarding 7-Eleven treble damages pursuant to 15 U.S.C. § 1117.

8. Awarding 7-Eleven punitive damages in an amount to be determined.

9. Awarding 7-Eleven its reasonable attorneys' fees incurred in prosecuting this action.

10. Awarding 7-Eleven such other and further relief as the Court may deem just and equitable.

        DUANE MORRIS LLP

        */s/ Stephen Sussman*
        Stephen Sussman
        E-mail:	ssussman@duanemorris.com
        Sheila Raftery Wiggins
        E-mail:	srwiggins@duanemorris.com
        Adrienne Gittens
        E-mail:	agittens@duanemorris.com
        1940 Route 70 East, Suite 200
        Cherry Hill, NJ  08003
        Telephone: +1 856 874 4200
        Fax: +1 856 424 4446

        *Attorneys for Plaintiff, 7-Eleven, Inc.*

Dated: December 23, 2014